Charles W. Hingle (Bar No. 1947)
Shane P. Coleman (Bar No. 3417)
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, Montana  59103-0639
Telephone:  (406) 252-2166
Facsimile:  (406) 252-1669
chingle@hollandhart.com
spcoleman@hollandhart.com

Kevin W. Barrett (*pro hac vice*)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone:  (304) 345-6555
Facsimile:  (304) 342-1110
kbarrett@baileyglasser.com

ATTORNEYS FOR BRIAN A. GLASSER, AS TRUSTEE
OF THE YELLOWSTONE CLUB LIQUIDATING TRUST

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re:<br><br>YELLOWSTONE MOUNTAIN<br>CLUB, LLC, *et al.*,<br><br>Debtors. | Case No. CV 15-40-BU-SEH |
| BRIAN A. GLASSER, AS TRUSTEE<br>OF THE YELLOWSTONE CLUB<br>LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>DESERT RANCH LLLP, DESERT<br>RANCH MANAGEMENT LLC,<br>TIMOTHY BLIXSETH, BEAU<br>BLIXSETH, THORNTON BYRON<br>LLP, GEORGE MACK, JOHN DOES<br>1-100, and XYZ CORPS. 1-100,<br><br>Defendants. | Case No. 08-61570-11<br>Jointly Administered with Case Nos.<br>08-61571, 08-61572, and 08-61573<br><br>Adversary No. 10-00015<br><br>**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION FOR ENTRY OF AN ORDER MODIFYING PRELIMINARY INJUNCTION** |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................... ii

BACKGROUND ................................................................................................. 1

THE SETTLEMENT AGREEMENT .................................................................... 4

    Payment and Timeline of Actions to Consummate Settlement ............................ 4

    Releases and Timing of Releases ....................................................................... 6

    Dismissal of Litigation ...................................................................................... 8

    Securing Blixseth's Testimony in Ongoing Litigation ........................................ 9

    Blixseth Representations and Warranties ............................................................ 9

    Conditions to Effectiveness ............................................................................... 10

    Confidentiality ................................................................................................... 10

PRIOR ACTIONS IN FURTHERANCE OF SETTLEMENT .............................. 10

JUSTIFICATION FOR THE SETTLEMENT ....................................................... 12

ARGUMENT ...................................................................................................... 19

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Edra Blixseth*,
   2011 WL 5509484 (Bankr. D. Mont.) ................................................................18

*In re Yellowstone Mountain Club, LLC*,
   460 B.R. 254 ........................................................................................................18

*Martin v. Kane (In re A & C Properties)*,
   784 F. 2d 1377 (9th Cir. 1986) ....................................................................18, 19

## OTHER AUTHORITIES

F. R. Bankr. P. Rule 9019 .......................................................................................18

## EXHIBITS LIST

| Exhibit No. | Description | Page |
|---|---|---|
| A | Settlement Agreement | 10 |
| B | Stipulation | 3 |
| C | Information Blixseth provided to Trustee | 11 |
| D | Form of Release | 11 |

Brian A. Glasser, as Successor Trustee of the Yellowstone Club Liquidating Trust (the "Trust"), submits this Supplemental Memorandum of Law in support of the Trust's amended motion for entry of an order modifying the preliminary injunction entered in this case to permit Defendant Timothy L. Blixseth to transfer certain assets in connection with a certain transaction that would enable him to consummate a settlement agreement with the Trust resolving all litigation between Blixseth and the Trust and other related litigation, and respectfully states:

## BACKGROUND

1.       Blixseth and the Trust have reached a comprehensive settlement agreement (the "Settlement Agreement"), described in detail below and attached hereto as Exhibit A, that would, if fully consummated, resolve all litigation between Blixseth, his related entities, and the Trust and ultimately lead to the dismissal of the Trust's claims against Defendants Timothy L. Blixseth, Beau Blixseth, and Desert Ranch Management, LLC in this action.  In addition, the settlement requires both parties to release related parties in an effort to resolve other existing claims and the potential for further litigation among the parties and related parties, thereby effectuating a cost effective and judicially efficient resolution of a broad range of litigation.

2.       The Settlement Agreement with Blixseth follows on the heels of the Trust's agreement with the Chapter 7 Bankruptcy Trustee of Desert Ranch LLLP, pursuant to which the Court previously entered a stipulated judgment.  *See*

1

Doc 144.  In accordance with the parties' understanding under the Settlement

Agreement, that judgment would remain in full force and effect and be enforceable

by the Trust both in the Desert Ranch bankruptcy (with certain limitations) and

thereafter.

3.      The agreement does not resolve the Trust's claims against Defendant

Thornton Byron, LLP in this action, which are ready for trial.

4.      Blixseth has advised the Trustee that his ability to consummate the

Settlement Agreement between the Trust and Blixseth requires Blixseth to

encumber, transfer, or assign the litigation claims Blixseth has against third parties

identified in Schedule 6.1 of the Settlement Agreement (the "Litigation Claims") to

an identified third-party litigation funder (the "Third Party") in exchange for funds

to be paid directly to the Trust pursuant to the Settlement Agreement.

5.      Blixseth and the Trust respectfully seek the modification of this

Court's prior order previously entered in this action [Bankr. Doc. 216] (the

"Restraining Order") enjoining Blixseth from spending, transferring, concealing,

dissipating, assigning, hypothecating and/or encumbering any of his assets in an

amount or of a value exceeding $5,000 without prior Court approval to allow the

parties to move forward with the resolution of this and other matters through the

negotiated Settlement Agreement.  The transfer of the Litigation Claims to the

Third Party and, thus, consummation of the Settlement Agreement may not be

completed without the modification of the Restraining Order.

6.      To permit Blixseth to effect the contemplated transfer of the Litigation Claims to the Third Party, Blixseth and the Trust have entered into a stipulation providing for the entry of a stipulated order modifying the Restraining Order on certain terms and subject to certain conditions.  A true and correct copy of the stipulation is attached hereto as Exhibit B.  A copy of the stipulated order is attached to the stipulation.

7.      In particular, the stipulated order would modify the Restraining Order solely for the purpose of permitting Blixseth to effect the contemplated transfer of the Litigation Claims to the Third Party, but provides that the Restraining Order otherwise remains in full force and effect until this matter is resolved.

8.      The entry of the stipulated order would simply allow the transfer of the Litigation Claims to the Third Party to proceed and that transfer, if ultimately consummated and if the other conditions to the Settlement Agreement are satisfied, would lead to the resolution of this action, as well as others, between the Trust, the Trust Related Parties and Blixseth and the Blixseth-related Parties.

9.      In the event that the Settlement Agreement between Blixseth and the Trust is not fully consummated, the stipulated order provides that the contemplated transfer of the Litigation Claims would be rendered null and void and the parties would be returned to the *status quo ante*, wherein, among other things, the Restraining Order would remain in place.

10.    The Trust's Advisory Board, comprised of representatives of the Trust's beneficiaries and the Yellowstone Mountain Club's former creditors, has approved the Trust's agreement with Blixseth, inclusive of the stipulation and stipulated order.

## THE SETTLEMENT AGREEMENT

11.    The following provides a summary of the terms of the confidential Settlement Agreement:

## Payment and Timeline of Actions to Consummate Settlement

a.  Within ten business days after the satisfaction of the various conditions to the effectiveness of the Settlement Agreement (of which entry of the requested stipulated order is one), Blixseth will pay to the Trustee the sum of $3,000,000 (the "Payment").

b.  Prior to making the Payment, the Settlement Agreement contemplates a timeline of certain events the satisfaction of which also constitute conditions to the effectiveness of the Settlement Agreement.

### *Disclosure of Source of Funding*

c.  Within five business days after the execution and delivery of the Settlement Agreement, Blixseth must (all of which have been timely completed as indicated below):

  i.  Disclose and provide evidence of the source of all funds comprising the payment, including the identity of the Third Party and the specific litigation rights and any other consideration Blixseth has agreed to provide the Third Party in exchange for providing the funds making up the Payment;

  ii.  Provide a copy of the signed commitment letter of the Third Party agreeing to timely make the Payment;

  iii.  Sign a declaration under penalty of perjury that the source of the Payment is (a) solely from the transfer or assignment of the

4

Litigation Rights to a third party not related to or affiliated with Blixseth or any Blixseth-related party and (b) not from or derived from any asset that Blixseth previously transferred to the Third Party.

d. If the identified Third Party terminates or withdraws its commitment based on a delay in the transactions contemplated in the Settlement Agreement, Blixseth has the right to substitute a different third-party funder subject to the same provisions governing the identified Third Party.

e. The Trust agrees not to disclose the name(s) of the proposed funders to any party, except as necessary to obtain the approval of the Trust Advisory Board, the Montana bankruptcy court in the event the Trust had to seek its approval of the settlement, or as required to comply with other judicial or administrative process.

f. The Trust agreed to provide Blixseth with notice of its need to disclose the identity of the funder and generally cooperate with any efforts on his part to protect the confidentiality of the funder.

### *Trustee's Right to Accept or Reject Blixseth's Source of Funding*

g. The Trustee has the right to prospectively accept or reject the Payment within two business days after Blixseth made the disclosures as to his source of funds (this term has been timely satisfied as explained below).

h. If the Trustee rejects the Payment, the Settlement Agreement would become null and void (this term was not exercised by the Trustee as explained below).

i. If the Trustee accepts the Payment, he must seek and obtain the approval of the Trust Advisory Board within five business days thereafter (this term has been timely satisfied as indicated below).

### *Obtaining Approval of the Settlement*

j. The Trust's governing document authorizes the Trustee to compromise and settle any claim with the approval of the Trust Advisory Board or, if the Trust Advisory Board does not approve a settlement within thirty days after its presentment, the approval of the Montana bankruptcy court in connection with the Yellowstone Mountain Club bankruptcy case.

k. The Trustee agreed to use his best efforts to timely obtain the Trust Advisory Board's approval of the settlement (this term has been timely satisfied as indicated below).

l. If the Trust Advisory Board fails to timely approve the settlement, Blixseth has the right to elect either to terminate the Settlement Agreement or to permit the Trustee to seek the approval of the bankruptcy court, as contemplated under the Trust's governing documents (this term was not exercised because the Trust Advisory Board approved the Settlement Agreement as indicated below).

### *Modifying the Restraining Order*

m. Within three business days after the Trustee provides notice of Trust Advisory Board approval, the Trustee and Blixseth must enter into the stipulation regarding the Restraining Order and move to obtain an order of this Court modifying the Restraining Order solely for the purpose of allowing the proposed transaction to proceed (this term was timely satisfied as indicated below).

n. The initial agreement provided for a thirty-day period within which such an order might be entered.  The parties have entered into an amendment of the Settlement Agreement extending that period to sixty days.  A copy of the amendment is included in Exhibit A.  The sixty-day period is scheduled to expire on February 12, 2018.

### *Blixseth's Payment to the Trust*

o. The Payment is ultimately due within ten business days of the later of the approval of the settlement by the Trust Advisory Board or the bankruptcy court and the date on which the Restraining Order is modified.

p. If Blixseth fails to timely make the Payment in full, the Trustee has the right to terminate the Settlement Agreement and the agreement would be rendered null and void.

### Releases and Timing of Releases

q. The Settlement Agreement provides for full releases as between the Trust and Blixseth, but the timing of those releases differs.

r. Blixseth's release of the Trust, the Trustee, and its predecessors, successors, agents, representatives, attorneys, Board members, lenders, funders, creditors, insurers, heirs, and assigns becomes

effective on the date that all the conditions to the effectiveness of the Settlement Agreement occur, including Blixseth's payment of the settlement consideration.

s. The Trustee's release of Blixseth and his heirs and assigns on behalf of the Trust does not become effective until the "Blixseth Release Effective Date," defined as the later of

    i. The ninety-first day after the Trustee receives the full amount of the Payment without the intervening commencement of a bankruptcy case;

    ii. The date on which an order dismissing the involuntary bankruptcy case against Blixseth becomes final and nonappealable; and

    iii. The dates on which the statutes of limitations run on any action seeking to claw back the Payment from the Trust, the date on which any clawback action is finally dismissed, or the date on which Blixseth replaces any clawed-back funds with funds not otherwise subject to clawback.

t. The Settlement Agreement also provides for the execution and delivery of mutual releases as between Blixseth and certain Trust-related parties[1] and the Trust and certain Blixseth-related parties.[2]

u. Neither the Trust-related parties nor the Blixseth-related parties are required to execute mutual releases, but the mutual releases of the Blixseth-related parties must contain representations and warranties confirming that they are not hiding and have not hidden assets for Blixseth, Desert Ranch or any other Blixseth entity.

v. Other than the identified releases of Blixseth, the Trust, and the identified Blixseth-related and Trust-related parties, no other persons

---

[1] The Trust-related parties include CrossHarbor Capital Partners, Scoggin Capital Management, Credit Suisse, and the reorganized Yellowstone Mountain Club.

[2] The Blixseth-related parties include various Blixseth family members (Beau Blixseth, Morgan Blixseth, Tracy Blixseth, Carolyn and Fred Wheeler, and Arianne Eternod) and certain Blixseth attorneys (Jenny Doling, Summer Shaw, John Doubek, Becky James, Kevin O'Connell, Phil DeFelice, CJ Conant, Nathan Shultz and their firms).

are receiving releases under the Settlement Agreement, and the Settlement Agreement confirms that certain identified claims are not affected by the releases granted in the Agreement.

**Dismissal of Litigation**

    w. After Blixseth makes the Payment and the Settlement Agreement finally becomes effective (and without waiting for the Blixseth Release Effective Date to occur), the Trustee will take a variety of steps to end certain active pieces of its litigation with Blixseth, including:

        i. Dismissing the claims against Blixseth and his son, Beau Blixseth, in this action;

        ii. Moving to stay the prosecution of claims against Desert Ranch Management in this action until the Blixseth Release Effective Date;

        iii. Withdrawing the Trust's joinder in the petition initiating the involuntary bankruptcy case against Blixseth in Nevada and moving to dismiss counterclaims for sanctions that the Trust recently filed against Blixseth and his most recent attorneys in that proceeding;[3]

        iv. Stipulating to the remand of Blixseth's appeals of this Court's orders in the Tamarindo adversary proceeding, including requesting that the court of appeals order Blixseth's release and discharge from this Court's accounting order and remaining orders to show cause therein;

        v. Requesting that the sanctions previously awarded to the Trust against Blixseth be discharged or deemed satisfied;

---

[3] It should be noted that, since the parties entered into the Settlement Agreement, the United States District Court for Nevada upheld the dismissal of the involuntary petition against Blixseth.  On January 11, 2018, the State of Montana appealed that decision to the Ninth Circuit Court of Appeals.  In addition, the United States Bankruptcy Court for Nevada denied Blixseth's motion for sanctions against Montana and motion for an order to show cause against the Trust.  The Trust's motion for sanctions against Blixseth and his attorneys remains pending before the bankruptcy court.

vi.  Requesting that this Court release and discharge Blixseth from the accounting orders in the Tamarindo proceeding; and

vii.  Requesting that this Court lift the Restraining Order in its entirety.

x.  In the event that Blixseth and all the other parties to the pending appeal of the exculpation provisions of the Yellowstone Mountain Club plan and confirmation order execute mutual releases of each other, Blixseth agrees to dismiss his appeal of that order.

y.  After the Blixseth Release Effective Date, the Trust will file satisfactions of its various judgments against Blixseth, stipulate to the dismissal of the claims the Trust asserts in this action against Desert Ranch Management, and dismiss any other claims and appeals then pending.

## Securing Blixseth's Testimony in Ongoing Litigation

z.  Blixseth agrees to accept service by email of trial and deposition subpoenas to testify under certain conditions in connection with the Trust's ongoing or potential litigation with Thornton Byron in this action, the continuing orders to show cause in the Tamarindo proceeding against Messrs. Flynn and Stillman and against Fox Rothschild to recover the fees and expenses paid to it from the Tamarindo sale proceeds.

## Blixseth Representations and Warranties

aa. In addition to making the representations and warranties noted above with respect to his source of funding, Blixseth makes a number of other specific representations and warranties designed to establish that neither he nor any of his relatives or related entities own, hold, or control any Blixseth-related assets other than those previously specifically disclosed in various legal proceedings and the litigation claims he proposes to transfer to the Third Party.

bb. These representations and warranties reflect ongoing obligations to disclose and survive the consummation of the Settlement Agreement.

cc. Blixseth's breach of any of the representations and warranties would enable the Trust to file a confession of judgment Blixseth has

executed and must deliver in connection with the Settlement Agreement.[4]

## Conditions to Effectiveness

dd. The Settlement Agreement is subject to a number of conditions precedent, including timely satisfaction of the obligations of the parties under the Settlement Agreement, the entry of the order modifying the Restraining Order, Blixseth's delivery of his executed and notarized affidavit of confession of judgment, and Blixseth's timely making of the Payment.

ee. If any of the identified conditions has not been timely satisfied or waived, the Settlement Agreement is null and void.

## Confidentiality

ff. Blixseth and the Trust agree that the terms and provisions of the Settlement Agreement, including the amount of the Payment, are confidential and may not be disclosed except for certain necessary disclosures.

12. A copy of the Settlement Agreement is attached hereto as Exhibit A.

## PRIOR ACTIONS IN FURTHERANCE OF SETTLEMENT

13. Pursuant to the terms of, and in order to satisfy the conditions of, the Settlement Agreement, the Trustee and Blixseth have taken the following actions prior to the filing of the Amended Motion:

a. Blixseth timely delivered to the Trustee all of the information and documents relating to the source of funding of the Payment, as

---

[4] As evidenced in Exhibit B to the Settlement Agreement, Blixseth executed and notarized the affidavit of confession of judgment.  He has not yet delivered the original executed and notarized affidavit to the Trust, and accordingly the effectiveness of the Settlement Agreement remains subject to the condition that he deliver the affidavit to the Trust.  *See* Exhibit A at § 8.1(g).

required under the terms of the Settlement Agreement.  He has
identified the Third Party, provided a copy of the Third Party's letter
committing to timely make the full amount of the Payment, and
executed and delivered the required declaration.  Copies of the
information Blixseth provided to the Trustee are attached hereto as
Exhibit C.

b.  The Trustee, after investigating and consulting with the Trust
Advisory Board regarding the source of the funding, timely notified
Blixseth of its prospective acceptance of the Payment.

c.  Thereafter, the Trustee sought and obtained the Trust Advisory
Board's approval of the settlement as embodied in the Settlement
Agreement and timely provided notice thereof to Blixseth.

d.  The Trustee, in consultation with the Trust-related parties, and
Blixseth have agreed on the form of mutual release between Blixseth
and the Trust-related parties.  A copy of the form of the release is
attached hereto as Exhibit D.

e.  Blixseth and the Trustee, after agreeing to certain changes to the form
attached to the Settlement Agreement, timely executed the Stipulation
relating to the proposed modification by this Court of the Restraining
Order (a copy of which is attached hereto as Exhibit B) and the
Trustee timely filed the initial motion and related brief, each approved

11

by Blixseth as to their form and content, seeking the proposed

modification by this Court of the Restraining Order.  Docs 152 & 153.

f.   Counsel for the Trustee and Blixseth participated in this Court's status

conference on January 3, 2018.

g.   Pursuant to the Court's instructions at the status conference, the

Trustee filed a notice of its intention to file an amended motion and

setting out as an initial matter the parameters of the settlement.

Doc 154.

h.   As indicated in the notice, the Trustee is filing an amended motion

and this Supplemental Memorandum of Law.  Blixseth has reviewed

and approved the same.

## JUSTIFICATION FOR THE SETTLEMENT

The Trust and Blixseth acknowledge that the settlement provides for

recovery of a comparatively small dollar figure in relation to the $525 million-plus

in federal court judgments the Trust has against Blixseth after nearly ten years of

protracted litigation in courts across the United States.  However, the Settlement

Agreement ends extensive litigation between the Trust and Blixseth, and provides

significant releases to certain other Trust Related Parties and Blixseth Related

Parties.

The Trustee advises the Court that he does not intend to make any

distributions of the settlement proceeds the Trust receives from Blixseth for a

period of perhaps years.  In addition to the claw back concerns identified and

addressed in the Settlement Agreement (and described above), the Trustee

anticipates continued litigation with other parties, including Thornton Byron in this

action, for which the settlement proceeds will provide ongoing funding.  It is clear,

however, that the settlement proceeds, even if distributed in full, will provide no

distribution of funds to the Trust's beneficiaries, the creditors of the former

Yellowstone Mountain Club, under the terms of the trust agreement governing the

Trust.  In fact, the settlement proceeds, even if distributed in full, will not even

cover the claims of the Trust's creditors, including the Trust's lawyers, lenders,

and funders who, collectively, have advanced millions of dollars to the Trust to

cover litigation costs and expenses and are still owed more than $3.6 million.[5]

Nonetheless, the Trustee and the Trust Advisory Board, comprised of

representatives of the Trust's beneficiaries and established under the Yellowstone

Mountain Club Chapter 11 plan and the agreement establishing and governing the

Trust, have determined that the settlement is the best the Trust can achieve under

the circumstances and is in the best interests of the Trust.

Over the past decade, the Trust has extensively investigated Blixseth and his

close relatives and related entities, including Defendants Beau Blixseth, Desert

---

[5] *See* Thirty-Third Quarterly Status Report (for Sept. 30, 2017) [Bankr. Doc 2647].
The Trustee believes that the next quarterly status report, expected to be filed on or
before January 31, 2018, will reveal that the amount owed to the Trust's creditors
now exceeds $4.2 million.

Ranch and Desert Ranch Management, and determined that none of them either held or continues to hold any substantial assets that Blixseth and his related entities once held.  The Trustee's investigation has been exhaustive.  The Trust has obtained volumes of documents relating to Blixseth's assets.  It took a debtor's examination of Blixseth in November 2014.  It further deposed Blixseth over two days in jail in Great Falls regarding Desert Ranch and its assets in connection with the Trust's litigation with his former wife in Seattle.  The Trustee has deposed numerous former Blixseth attorneys, accountants, and employees, including conducting depositions of Blixseth's Mexican lawyer, accountant, and controller in connection with the accounting order in the Tamarindo proceeding.  The Trustee has questioned Blixseth, as the corporate representative of Desert Ranch, under oath regarding, and reviewed and obtained documents from, Desert Ranch and Desert Ranch Management in connection with the bankruptcy cases they filed in California.  The Trustee's representatives have spoken with his most recent landlord and other business and former personal associates.  Since the debtor's exam, the Trustee has engaged professional judgment enforcement consultants with expertise in investigating overseas assets to assist his retained professionals in the investigation.  Both on its own and in coordination with its judgment enforcement consultants, the Trust has issued more than eighty subpoenas just in the past fifteen months out of courts in New York and Montana to both national and international banks and other financial institutions, utilities providers, airlines

14

and airline ticketing services, money transfer services, corporation service providers, asset purchasers, real estate agencies, music companies, hotel and travel service companies, and Blixseth relatives seeking information as to assets held by Blixseth, his relatives, and his related entities.  It has even had an investigator surveil the home he moved to in southern California after his release from jail in July or August 2016.  Despite the overwhelming focus of the Trustee and his professionals and consultants on identifying assets to which the Trust's judgments may attach, the Trustee has discovered and attached no tangible assets of any significance, has no information as to any identifiable tangible assets, and no current prospects of attaching any assets of Blixseth, other than the highly speculative litigation rights Blixseth proposes to transfer to the Third Party.[6]

Notably, however, the Settlement Agreement preserves the Trust's rights to proceed against Blixseth, his relatives and related entities should it turn out that they actually have or have hidden Blixseth's assets.  As noted, the Trust's

---

[6] Over the years, the Trustee has closely followed Blixseth's litigation with many other parties.  As part of its investigation of attachable assets, the Trustee has evaluated the prospects of Blixseth's recovery in that litigation.  And, in fact, the Trustee has taken steps to attach Blixseth's litigation rights in connection with several pieces of that litigation.  While the Trustee believes that some of Blixseth's litigation claims may have value, that value is highly speculative, inherently uncertain, and subject to extensive delay in light of the stiff opposition of Blixseth's opponents.  Moreover, the Trustee has obvious concerns that its execution on those litigation rights will cause the evaporation of whatever value the rights may have as Blixseth, without any real hope of recovering enough to satisfy the Trust's judgments, would lose any incentive to continue to press those claims.

judgment claim against Desert Ranch will remain in effect and fully enforceable against Desert Ranch in, and even after the closing of, the Desert Ranch bankruptcy case in spite of the settlement.  If Desert Ranch holds (or recovers) any assets other than certain identified assets,[7] the Trustee may pursue and attach those assets in the enforcement of its judgment against Desert Ranch.  Beyond the possibility of Desert Ranch's holding or recovery of assets, the Settlement Agreement also embodies extensive representations of Blixseth and empowers the Trustee to seek a confessed judgment that would essentially revive the Trust's principal $286 million judgment against him.  Similarly, each Blixseth-related party entering into a mutual release would also make extensive representations and warranties as to Blixseth's assets, the breach of which would render their releases null and void.  Thus, in the event it turns out, contrary to those representations and warranties, that Blixseth, his relatives, or his related entities have any assets, the Trust may take actions to pursue and attach those assets.

---

[7] The Trustee agreed as part of the settlement to waive its right to distributions in the Desert Ranch bankruptcy case relating to any distributions on account of Desert Ranch's possible interests in Overlook Partners, LP.  The Trustee has investigated those interests in detail and concluded that those interests have only speculative value.  Although the property held by Overlook Partners may have significant value, Overlook Partners has significant debt secured by those interests in the property and would have to satisfy that debt in full before Desert Ranch's fifty percent equity interest may realize any value.

The Trustee also points out that the Trust currently holds other assets of value and retains the right to proceed against other individuals and firms to further enhance the Trust's recoveries.

First, the Trust currently owns Blixseth's former wife's former home, having secured it in connection with a settlement of the $9.4 million fraudulent transfer judgment the Trust obtained against Blixseth's former wife in a jury trial in Seattle in 2016.  Although the Trustee has determined to continue to hold the home until the beginning of 2021,[8] the Trustee notes that Zillow currently shows the home, which is located in Medina, Washington, one of the best real estate markets in the Seattle area, as having an estimated value of nearly $1.4 million.

In addition, despite the Trust's settlement with Blixseth, the Trust also reserved the right to continue to prosecute claims against a number of Blixseth's former lawyers.  The reserved claims include, perhaps first and foremost, the trial-ready claim against Thornton Byron in this adversary proceeding in which the Trust is seeking to recover some $370,000 ($207,000 in fees and expenses the Yellowstone Club paid Thornton Byron for services performed for Blixseth, together with prejudgment interest of roughly $162,000 from the date of demand).  Further, upon the resolution of Blixseth's appeal in the Tamarindo proceeding, the

---

[8] As part of the settlement with the former Mrs. Blixseth, the Trustee agreed to permit Mrs. Blixseth and her minor daughter to live in the home under a lease until the daughter's graduation from high school.  That period roughly coincides with redemption period in Washington State and rent equal to the applicable homestead exemption from execution.

Trust intends to pursue the existing orders to show cause against Michael Flynn and Phillip Stillman for their alleged role in Blixseth's sale of the Tamarindo Resort, including seeking to recover an estimated $672,000 in legal fees and expenses paid to them out of the Tamarindo sale proceeds.  The Trust also reserved the right to enforce its Ninth Circuit $51,000 sanctions order against Mr. Flynn. And, finally, the Trust reserves the right to prosecute claims to recover an estimated $1.4 million in fees and expenses that Blixseth paid to Fox Rothschild LLP out of the Tamarindo sale proceeds.

Inasmuch as the settlement offers an immediate significant cash payment that will provide substantially more value than might be expected from continued litigation with Blixseth, the Trustee and the Trust Advisory Board determined that the settlement is in the best interests of the Trust and its beneficiaries.

The Trustee notes that the proposed settlement is a disappointment to the Trustee, the Trust Advisory Board, the Trust's counsel and undoubtedly, most of all, the beneficiaries of the Trust.  Nevertheless, the settlement comports with the law applicable to compromise of disputes in bankruptcy.  *See* F. R. Bankr. P. Rule 9019; *Martin v. Kane (In re A & C Properties),* 784 F. 2d 1377, 1380-81 (9th Cir. 1986); *In re Yellowstone Mountain Club, LLC*, 460 B.R. 254. 260 (Bankr. D. Mont. 2011); *In re Edra Blixseth*, 2011 WL 5509484 (Bankr. D. Mont.).  Although the Trust has been very successful in its litigation against Blixseth, the Trustee has, after extensive investigation, determined that it will be extremely difficult to

18

collect anything more from him, his related entities, or his relatives.  The Trust has already incurred expense beyond its means of repayment and is likely to incur considerably more expense without the compromise before the court.  The paramount interests of beneficiaries may never be satisfied whether or not the motion is granted but, clearly, their interests will not be better served if the motion is denied and the settlement is not consummated.  *See Martin v. Kane*, 784 F. 2d at 1380-81.

## ARGUMENT

The Trust, for whose benefit the Restraining Order was entered, has concluded that modifying the Restraining Order on the terms and subject to the conditions set forth in the stipulation and stipulated order as contemplated in the Settlement Agreement is in the best interests of the Trust and its beneficiaries.  The modification of the Restraining Order will allow Blixseth to transfer the Litigation Claims as a necessary condition to consummating the Settlement Agreement with the Trust that would bring this litigation, the largest remaining piece of litigation arising out of the Yellowstone Mountain Club bankruptcy, and all other continuing but so far unsuccessful efforts of the Trust to enforce its judgments against Blixseth to an end.

The requested modification of the Restraining Order is, moreover, entirely consistent with its terms, as the Restraining Order actually contemplated Blixseth's ability to transfer assets, albeit with the prior approval of this Court.  Pursuant to

the stipulation, the Trust has evidenced its consent to the contemplated transfers, and accordingly the Court should enter the stipulated order.

## CONCLUSION

This Court should enter the stipulated order attached to the stipulation modifying the preliminary injunction entered in this case to permit Defendant Timothy L. Blixseth to consummate the transfer of his litigation rights to the Third Party to effectuate the Trust's settlement with Blixseth.

Dated:   January 12, 2018

/s/ Charles W. Hingle
Charles W. Hingle (Bar No. 1947)
Shane P. Coleman (Bar No. 3417)
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, Montana  59103-0639
Telephone:  (406) 252-2166
Facsimile:  (406) 252-1669
chingle@hollandhart.com
spcoleman@hollandhart.com

Kevin W. Barrett (admitted *pro hac vice*)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone:  (304) 345-6555
Facsimile:  (304) 342-1110
kbarrett@baileyglasser.com

ATTORNEYS FOR BRIAN A. GLASSER,
SUCCESSOR TRUSTEE OF THE
YELLOWSTONE CLUB LIQUIDATING
TRUST

## CERTIFICATE OF COMPLIANCE

The undersigned, Charles W. Hingle, certifies that this Brief complies with the requirements of Rule 7.1(d)(2).  The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman font typeface consisting of 14 characters per inch.  The total word count is 5,090 words, excluding caption and certificates of compliance.  The undersigned relies on the word count of the word processing system used to prepare this document.


/s/Charles W. Hingle

10590268_2.docx